IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**HERMAN MONTOYA,**

    **Plaintiff,**

**v.**                                                                                       **CIV 07-0031 JH/RHS**

**BURRO ALLEY PARTNERS, LTD., and
SANTA FE SCHOOL BOARD,**

    **Defendants.**

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Burro Alley Partners, Ltd.'s[1] ("Burro Alley") Motion for Summary Judgment (Doc. 30), filed Aug. 8, 2007; on the Santa Fe School Board's ("SFSB") Motion for Summary Judgment (Doc. 48), filed November 20, 2007, and on SFSB's Motion to Reset Trial (Doc. 43), filed October 8, 2007. Pro se plaintiff Herman Montoya did not timely respond to the motions. But he filed a document entitled "Stating a claim" with several exhibits on September 10, 2007 (Doc. 42), and filed a "Response" on November 19 (Doc. 47) to Burro Alley's motion. He filed an "Answer to Santa Fe School Board - Land Given to Them by U.S. Government" with exhibits on December 7, 2007 (Doc. 72). The Court has liberally construed these documents as responses to the motions for summary judgment. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991) (stating that the principle that a "pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers" "applies to all proceedings involving a pro se litigant"). The Court will grant summary judgment to

---

[1] Although Montoya sued "Burro Alley Corp." the property around which the controversy exists was actually conveyed to "Burro Alley Partners, Ltd." and the Defendant has clarified that the latter name is, indeed, the proper name of the entity. *See* Def. Burro Alley's Mot. to Dismiss (Doc. 30) at 1. The Court has modified the style of the case to clarify the proper defendant name.

both defendants because 1) the doctrine of *res judicata* bars one of his claims against Burro Alley, and 2) because Montoya has not shown that he has ever held legal title to the property at issue which is at the core of his takings claim and, therefore, cannot prevail against SFSB[2].

## LEGAL STANDARD

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action,'" *Celotex Corp. v Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). A defendant is entitled to summary judgment if the admissible evidence establishes "that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(b). To defeat summary judgment, the plaintiff "must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact." *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1537 (10th Cir. 1995) (citing *Celotex Corp.*, 477 U.S. at 324).

## ANALYSIS

In his complaint, Montoya alleges that SFSB "surveyed and sold my property to Burro Alley properties without compensating me. . . . I am the owner having recorded deed and paying the taxes." Compl. (Doc. 1) at 3. He asserts that SFSB took his property in violation of the Fifth Amendment's takings clause. *See id.* at 3. Montoya asserts that Burro Alley "illegally" was given the property in a state-court quiet-title suit over ownership of the land, and appears to seek a declaratory judgment that the land actually belongs to him. *See id.* at 4. He also contends that Burro Alley charged "us"[3]

---

[2] Although the Defendants made other arguments in support of their motions for summary judgment, in light of the Court's rulings, it is not necessary to address those issues.

[3] In support of this claim, however, Montoya attaches only a copy of the first page of a criminal complaint/summons against Martin Pacheco filed by the city of Santa Fe. *See* Doc. 42 at

with trespass and larceny in March 2003 and the case was dismissed, *see id.* at 3, which the Court construes as a state-law claim for malicious abuse of process. *See* Doc. 42 at 14 (requesting damages for "false charges"). Montoya also requests damages for the loss of the property and/or to be given back the property. *See id.* at 5.

In support of his claim that he held recorded, legal title to the property in question, Montoya submitted a quitclaim deed recorded on February 25, 2005, that purports to quit claim Martin Pacheco's interest in the property to Montoya.. *See* Doc. 11 at 6.

The Defendants submitted documents establishing that, on October 18, 2004, a state-district court ruled that Burro Alley owns legal title to the land Montoya claims was illegally taken from him, and that Montoya and Pacheco, who, along with their corporation, were defendants in that case, were enjoined from directly or indirectly claiming a right, interest, or title to the property. *See* Doc. 62. Burro Alley submitted an affidavit stating that Montoya, Pacheco, and their corporation did not appeal from that ruling, *see* Doc 30, Ex. 1 at 2, and Montoya does not dispute that fact. The Defendants also submitted documents tracing the valid legal chain of title to the property, *see* Docs. 49-51, 53, and contend that Montoya has never held legal title to the property, even though he filed documents purporting to transfer title to the property from him and Pacheco to their corporation in 1998 and even though he has submitted documents indicating that the corporation has challenged the property's tax evaluation.

The Defendants further conclusively established that the quit-claim deed Montoya filed on February 20, 2007, in support of his claim of recorded ownership had already been declared void on

---

10. Clearly, Montoya, as a pro se plaintiff who is not a lawyer, cannot bring a claim on behalf of another person. *See Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others.").

June 23, 2005 in state-district court as violating the court's prior order enjoining Montoya and Pacheco from making any legal or equitable claim to the property. *See* Doc. 63. Burro Alley contends that Montoya has again violated the state-court order by making a frivolous claim to the property in this suit and requests Rule 11 sanctions. Montoya has not addressed that request.

**1. Claims against Burro Alley.**

The Court concludes that, insofar as Montoya seeks a declaratory judgment affirming his contention that he, and not Burro Alley, owns the property at issue, that claim is precluded by the doctrine of *res judicata*. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). The doctrine "is applicable when the parties to a first and second lawsuit are the same or in privity, the cause of action is the same in both suits, and there has been a final decision on the merits in the first suit." *Slide-A-Ride of Las Cruces, Inc. v. Citizens Bank*, 733 P.2d 1316, 1320 (N.M. 1987). A party seeking to bar a subsequent claim also must demonstrate that the plaintiff had a full and fair opportunity to litigate issues in the original suit. *See id.*

The Court concludes that Burro Alley has conclusively established all three elements of *res judicata* and Montoya is barred from once again bringing suit against it to challenge its legal right to the property at issue.

Burro Alley has not, however, addressed Montoya's state-law claim for malicious abuse of process, and the Court, therefore, may not grant summary judgment to it on that unraised issue. Nevertheless, the Court will dismiss that potential claim because, as discussed below, there is no other basis for federal subject-matter jurisdiction, and the court declines to exercise supplemental jurisdiction on that state law claim.

**2. Claim against SFSB.**

Montoya has alleged only a takings claim against SFSB. In order to establish standing and to succeed on an unconstitutional takings claim, Montoya must establish a protectable property interest. *See Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1255 (10th Cir. 2004) (noting that, to establish Article III standing, the plaintiff must present evidence of an injury-in-fact, which "is an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent") (internal quotation marks omitted); *E.Spire Communications, Inc. v. N.M. Pub. Reg. Comm'n*, 392 F.3d 1204, 1210 (10th Cir. 2004) (stating that, to establish an unconstitutional taking, the plaintiff must show a "legitimate claim of entitlement to some benefit") (internal quotation marks omitted). As noted above, Montoya has not established any legal or equitable interest in the property at issue. Summary judgment will be granted in favor of SFSB.

**3. Supplemental jurisdiction.**

A federal district court may decline to exercise supplemental jurisdiction over potential state-law claims when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Court of Appeals for the Tenth Circuit has instructed district courts that, when federal jurisdiction is based solely upon a federal question, absent a showing that "the parties have already expended a great deal of time and energy on the state law claims, . . . a district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial." *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002); *see McWilliams v. Jefferson County*, 463 F.3d 1113, 1117 (10th Cir. 2006) (citing § 1367(c)(3) and stating that, "the pre-trial dismissal of all federal law claims, leaving only a state law claim, generally prevents a district court from reviewing the merits of the state law

claim"). The Court will dismiss the potential state-law claim for malicious abuse of process against Burro Alley without prejudice.

### 4. Rule 11 sanctions.

Burro Alley requests Rule 11 sanctions in the amount of its attorneys' fees plus $5000 because Montoya disobeyed the permanent injunction prohibiting him from making any further claims to the property and because Montoya knew, at the time he filed his federal suit, that his and Pacheco's attempt to create a property right where none existed by signing a bogus quit-claim deed was void. In support of its motion, Burro Alley attached a letter its counsel wrote to Montoya on May 4, 2007, explaining to Montoya in great detail why he was bound by the state-court rulings and why his purported quit-claim deed from Pacheco was void, and warning him that it would separately file a Rule 11 motion for sanctions if Montoya did not agree to dismiss his suit against it. *See* Doc 30, Ex. G. But Burro Alley did not follow through with its threat to file a separate rule 11 motion.

A motion for Rule 11 sanctions "must be made separately from other motions and must describe the specific conduct that allegedly violates Rule 11(b)." Rule 11(c)(2). The rule also requires the party seeking Rule 11 sanctions to wait 21 days from service before filing the motion for sanctions with the Court. This period allows the filing party an opportunity to withdraw or correct the challenged document and to avoid sanctions. *See id.* The Tenth Circuit strictly construes Rule 11's procedural requirements, noting that

> [t]he safe harbor provisions were intended to protect litigants from sanctions whenever possible in order to mitigate Rule 11's chilling effects, formalize procedural due process considerations such as notice for the protection of the party accused of sanctionable behavior, and encourage the withdrawal of papers that violate the rule without involving the district court. Thus, a failure to comply with them should result in the rejection of the motion for sanctions.

*Roth v. Green*, 466 F.3d 1179, 1192 (10th Cir. 2006) (reversing award of Rule 11 sanctions and

holding that "nothing in subsection (c)(1)(A) [recently renumbered as (c)(2)] suggests that a letter addressed to the alleged offending party will suffice to satisfy the safe harbor requirements"), *cert. denied*, 128 S. Ct. 69 (2007)) (internal quotation marks, citation, and brackets omitted).  Further, Rule 11 sanctions cannot be sought by an opposing party after summary judgment has been granted, even if the offending party was previously informally warned about the potential of Rule 11 sanctions.  *See id.* at 1193.

Because Burro Alley failed to comply with the procedural requirements of Rule 11, the Court must deny its request.

> This does not mean that Montoya should escape Rule 11 sanctions, however.
>
> A violation of Rule 11 occurs when a pleading is presented for any improper purpose; contains claims or contentions not warranted by existing law or by a nonfrivolous argument for extension or reversal of existing law; contains allegations or factual contentions that lack evidentiary support; or contains denials of factual contentions that are not warranted on the evidence.  Rule 11(b)(1)-(4).  *See also Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1008 (8th Cir. 2006), *cert. denied*, --- U.S. ----, 127 S. Ct. 2043, 167 L. Ed.2d 767 (2007).  Rule 11(c)(1)(B) provides that, "[o]n its own initiative, the court may enter an order describing the specific conduct that appears to violate [Rule 11(b)] and directing an attorney, law firm, or party to show cause why it has not violated" the rule.  A sanction imposed under Rule 11 "may consist of, or include . . . an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation."  Rule 11(c)(2).

*In re Allen n re Allen*, --- Fed. Appx. ----, NO. 06-1429, 2007 WL 2753077, *3 (10th Cir. Sep 19, 2007).  Rule 11 sanctions may also include "nonmonetary directives."  Rule 11(c)(4); *see Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989) (discussing court's inherent power to impose filing restrictions).  In order to avoid Rule 11 sanctions, a pro se party's actions must be "objectively reasonable."  *White v. Gen. Motors Corp.*, 908 F.2d 675, 680 (10th Cir.1990); Rule 11(b) (imposing same standard on both attorneys and "unrepresented part[ies]").  Montoya's actions were not objectively reasonable and are particularly egregious because he was fully aware both of the

permanent injunction enjoining him from making any claim, directly or indirectly, to the property in question and of the fact that his purported quit-claim deed was void and he had no other basis for claiming ownership. Burro Alley carefully explained to Montoya why he could not bring claims in federal court based upon his alleged title to the land, and attached hard copies of the controlling cases to its letter for his benefit. Montoya has demonstrated a blatant disregard of court orders, swore that he legally owned the land in question, which he knew to be false, and has needlessly burdened this Court with his frivolous filings.

Appearing pro se does not give Montoya a "'license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) (quoting *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986)). The Court will order Montoya to show cause why he should not sanctioned in the amount of $3000, to be paid to the Court, and why filing restrictions should not be imposed precluding him from filing any further suits against the Defendants or any other person or entity based on his alleged ownership of the land in question.

Montoya should address whether a filing restriction and/or the proposed monetary sanction is the minimum amount that will serve to adequately deter future undesired behavior and whether he has the ability to pay the proposed monetary sanction. Any contentions regarding inability to pay must be based on evidence he must present to the court concerning his current financial situation. He may also address a number of other factors, "such as the [his] history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances" that may make the proposed sanctions more or less appropriate. *White*, 908 F.2d at 684-85. The Court notes that Montoya has failed to respond to motions and that he failed to appear

for the scheduling conference held on August 30, 2007. *See* Doc. 39 ("Although provided with notice, Plaintiff failed to appear or notify the Court as to any reason he could not appear because of emergency or otherwise."). If Montoya fails to respond to the Court's order to show cause, "the court may ignore ability to pay in levying sanctions." *White*, 908 F.2d at 685.

**NOW, THEREFORE, IT IS ORDERED** that Burro Alley's motion for summary judgment (Doc. 30) is granted in part on Montoya's request for a declaratory judgment or for damages regarding ownership of the property in question;

**IT IS FURTHER ORDERED** that SFSB's motion for summary judgment (Doc. 48) is granted and its motion to reset trial (Doc. 43) is denied as moot;

**IT IS FURTHER ORDERED** that Montoya's state-law claim for malicious abuse of process against Burro Alley is dismissed without prejudice;

**IT IS FURTHER ORDERED** that Montoya shall show cause by filing a brief within ten days of the filing of this order demonstrating why he should not be sanctioned in the amount of $3000 for violating Rule 11 and why filing restrictions should not be imposed.

_____
UNITED STATES DISTRICT JUDGE